## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT HARRIS, RON COPE and BULK TRANS-LOAD AUTHORITY, LLC** | § § § § | |
| **Plaintiffs** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:22-CV-03983** |
| **PROPPANT EXPRESS INVESTMENTS, LLC d/b/a PROPX; PROPPANT EXPRESS SOLUTIONS, LLC d/b/a PROPX; ROBERT RASMUS; CHAD MCEVER; JIM WHIPKEY; JAY ALSTON; and RED OAK CAPITAL MANAGEMENT, LLC** | § § § § § § § § § § | |
| **Defendants** | § | |

### PLAINTIFFS' MOTION FOR REMAND

Plaintiffs Robert Harris, Ron Cope and Bulk Trans-Load Authority, LLC file this Plaintiffs' Motion for Remand and respectfully request that this case be remanded to the 334th Judicial District Court of Harris County, Texas. In support, Plaintiffs would show the Court as follows:

## TABLE OF CONTENTS

ISSUES PRESENTED ................................................................................................ 3

SUMMARY OF THE ARGUMENT ........................................................................ 3

NATURE AND STAGE OF THE PROCEEDING ................................................. 3

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 4

ARGUMENTS AND AUTHORITIES .................................................................. 10

    A.    Plaintiffs assert no Federal Claims ...................................................... 12

    B.    Plaintiffs' State Law Claims do not necessarily raise disputed and substantial federal issues ................................................................ 17

    C.    Defendants' Notice of Removal is untimely under 28 U.S.C § 1446(b) ............ 21

RELIEF REQUESTED .......................................................................................... 25

CERTIFICATE OF SERVICE .............................................................................. 25

## ISSUES PRESENTED

1.     Whether this Court has federal question jurisdiction over Plaintiffs' petition asserting only state law claims under the well-pleaded complaint rule. Federal question jurisdiction is reviewed de novo. *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 242 (5th Cir. 2022).

2.     Whether Defendants' removal was timely under 28 U.S.C.S. § 1446(b)(3). This involves application of an unequivocally clear standard. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211-212 (5th Cir. 2002).

## SUMMARY OF THE ARGUMENT

3.     Defendants'[1] removal is based on a false premise: Plaintiffs do not and have never asserted any claim for patent infringement or other violation of federal law. Plaintiffs' state law claims also do not fall within the "special and small" exception under *Gunn v. Minton*, 568 U.S. 251, 258 (2013). And even if Defendants could fit within that "special and small" exception, their removal was untimely under 28 U.S.C.S. § 1446(b)(3). For all those reasons, this case should be remanded to state court.

## NATURE AND STAGE OF THE PROCEEDING

4.     Plaintiffs sued Defendants asserting traditional state law claims of fraud, breach of fiduciary duty, and misappropriation through breach of confidence. From the outset, Plaintiffs alleged that Defendants:

[1] The "Defendants" as they are referred to herein are Proppant Express Investments, LLC d/b/a PropX; Proppant Express Solutions, LLC d/b/a PropX; Robert Rasmus; Chad McEver; Jim Whipkey; Jay Alston; and Red Oak Capital Management, LLC. Others listed in pleadings are no longer parties in the case.

- defrauded Plaintiffs out of patent rights related to Plaintiffs' invention – Plaintiffs' state law fraud claim;

- breached fiduciary duties and knowingly participated in breaches of fiduciary duty by others in order to take advantage of Plaintiffs' invention for their own financial gain – Plaintiffs' state law fiduciary duty claim; and

- misappropriated the logistics technology that was covered by Plaintiffs' patent application, which Defendants represented (falsely) they would prosecute for Plaintiffs (as "partners") – Plaintiffs' state law misappropriation through breach of confidence claim.[2]

From the outset, and with every amendment, each of Plaintiffs' pleadings have expressly disavowed any claims arising under Federal law.[3]

5.     This case was originally filed in January 2020. It was set for trial February 13, 2023. However, sixty days from trial in state court, Defendants suddenly sought refuge (and delay) in this Court. For the reasons set forth below, Defendants' removal is improper, and Plaintiffs ask the Court to remand to the Harris County District Court.

**FACTUAL AND PROCEDURAL BACKGROUND[4]**

6.     In 2010, Plaintiffs developed a containerized sand logistics technology used in the transport and storage of fracking sand.[5] This technology substantially reduced the cost, and it enhanced efficiency, reliability, and accuracy in the delivery of frac sand to well sites, providing multiple advantages over then-existing practices.[6]

---

[2] Appx at 43-46
[3] Compare Appx at 12  at ¶3.5 with Appx at 30 at ¶3.5
[4] The facts below are from Plaintiffs' live pleading (Third Amended Petition) at the time of removal.
[5] Appx at 31
[6] Appx at 31

7.      In late 2010, Plaintiffs found a partner to bring this logistics technology to market in Hi-Crush and its principals – Robert Rasmus, Jim Whipkey, Jay Alston, and Chad McEver (collectively "Hi-Crush").[7] In 2011, Plaintiffs and Hi-Crush agreed to a joint venture with Plaintiffs contributing their technology, and Hi-Crush contributing capital.[8] Hi-Crush also agreed not to disclose or use Plaintiffs' logistics technology for any purpose other than pursuit of the joint venture.[9] Together, Plaintiffs and Hi-Crush built prototypes and prosecuted a patent application that initially had been filed by Plaintiffs but, at the request of Hi-Crush, was shifted to Hi-Crush's attorneys and financed by Hi-Crush.[10] Plaintiffs and Hi-Crush made presentations to prospective customers, such as Halliburton and EOG Resources, announcing to the world that they had "partnered" to bring Plaintiffs' logistics technology to market.[11] The joint venture was full speed ahead.

8.      Then, Hi-Crush did an about face. In July 2015, Hi-Crush represented that it was "out."[12] It represented that it did not want to pursue development of this technology further or bring it to market.[13] It represented that the logistics technology developed by Plaintiffs, including the patent application, was not "viable," and represented it had no interest in pursuing such technology.[14] Those representations were false.

---

[7] Appx at 31
[8] Appx at 34
[9] Appx at 34
[10] Appx at 37-38
[11] Appx at 34-36
[12] Appx at 39-41
[13] Appx at 39-41
[14] Appx at 39-41

9.      In truth, Robert Rasmus had decided that Hi-Crush would pursue this concept with another partner.[15] Rasmus admits that the concept in question was first developed by Plaintiffs and that the Hi-Crush principals (including Rasmus) first learned about the concept from Plaintiffs.[16] Emails confirm that Hi-Crush principals (including Chad McEver) reviewed and approved the brochure announcing that it had "partnered" with Plaintiffs to do so.[17] McEver further emailed Plaintiffs that the only "hold up" was documenting the deal "on our end."[18] But then, in 2015, Hi-Crush pulled the plug on its funding for the patent application, made the false representations to Plaintiffs, and secretly moved forward with a new partner to form PropX.[19]

10.      Without funds to continue the patent application, and acting in reliance on Defendants' false representations, Plaintiffs approached SandBox (another entity in the market Plaintiffs knew had been interested in such technology).[20] As it turns out, Hi-Crush (without Plaintiffs' consent or knowledge) had disclosed Plaintiffs' logistics technology to SandBox two years earlier (in 2013).[21] All Plaintiffs knew was that SandBox was also trying to bring a similar product to market. To Plaintiffs, SandBox appeared to be the only remaining alternative for monetizing its logistics technology.

---

[15] Appx at 220-226
[16] Appx at 230-232
[17] Appx at 177-180; 252-260; 280-289
[18] Appx at 327
[19] Appx at 39
[20] Appx at 40
[21] Appx at 38

11.    On August 28, 2015, Robert Harris executed an Intellectual Property Assignment and Royalty Agreement with John Oren and SandBox assigning rights to his invention to SandBox.[22] SandBox was eventually granted two patents covering that technology.[23] However, as of the date of the Assignment, Plaintiffs no longer owned the patent rights related to their logistics technology because, acting in reliance on Hi-Crush's false representations, Plaintiffs sold those rights to SandBox.[24] That deception is the basis of Plaintiffs' state-law claims.

12.    Plaintiffs also did not know that in 2015 Bob Rasmus had dinner with executives from Liberty Oilfiled Services in Houston.[25] Within a few months of that dinner, Hi-Crush and Liberty formed PropX for the purpose of bringing a sand container product to market.[26] As Rasmus later admitted under oath, this concept was the *same concept* Hi-Crush first learned about from Plaintiffs.[27] PropX began operations in late 2016, and has profitable and successful since its launch.[28]

13.    In July 2019, Plaintiffs learned from a Hi-Crush employee that Hi-Crush operated a "container division" in Colorado (which turned out to be PropX) and that Hi-Crush employees had been instructed to "go around Harris and Cope's patent."[29] "Harris and Cope's patent" is the same design that the joint venture was prosecuting to a patent

---

[22] Appx at 40; 328-333
[23] Appx at 294-319; 334-359
[24] Appx at 39-41; 328-333
[25] Appx at 39-41; 220-226
[26] Appx at 39-41; 220-226
[27] Appx at 230-232
[28] Appx at 39-43
[29] Appx at 42

until the false representations in 2015 that they were "out" because the patent was supposedly not "viable."[30] Despite "partnering" with Plaintiffs, Hi-Crush and its principals did not disclose to Plaintiffs anything about the containers being manufactured and sold or leased through its "container division."[31] After these revelations from the former Hi-Crush employee, Plaintiffs discovered that PropX was the "container division" manufacturing and selling the logistics technology that Plaintiffs had disclosed to Hi-Crush pursuant to the joint venture.[32]

14.     Plaintiffs filed this lawsuit against Defendants and others on January 21, 2020. At all times, Plaintiffs only asserted traditional state law claims. From the outset, Plaintiffs could not have been clearer that they were not asserting federal claims.[33] Plaintiffs' current pleading includes the same identical language[34]:

> 3.5     To the extent necessary, Plaintiffs expressly disavow any claim for relief in this Court that arises under any provision of the United States Constitution or any federal law or federal regulation. Any reference to any such provision herein is purely descriptive and does not give rise to any claim for relief under federal law.

15.     Contrary to Defendants' claim that Plaintiffs "are actually asserting patent infringement," Plaintiffs' claims are based on the ***fraudulent actions*** of Defendants, a classic "string-along" fraud that kept Plaintiffs' logistics technology off the market until

---

[30] Appx at 42
[31] Appx at 39-42
[32] Appx at 42-43
[33] Appx at 12 at ¶3.5
[34] Appx at 30 at ¶3.5

Defendants were ready to proceed with a different partner to form PropX – to the exclusion of Plaintiffs. Defendants' fraudulent course of conduct misled Plaintiffs (Defendants' "partners" in the joint venture) while actually waiting for a better deal to come along. Then, when it did, Defendants falsely "represented that the patents were 'not viable'" while planning to forming a "'container division for Hi-Crush' … to 'go around' the patent disclosed in the patent application that Plaintiffs had originally filed and that the joint venture had prosecuted from 2012 to 2015."[35] Those are state law tort claims.

16.     Nevertheless, on November 16, 2022—nearly three years after Plaintiffs' Original Petition was filed and less than 90 days from trial in state court—Defendants removed this case to this Court improperly characterizing Plaintiffs' claims as federal patent infringement claims. Defendants contend they were first made aware of Plaintiffs' claims through Plaintiffs' liability expert report in October 2022 as opposed to the pleadings dating back to January 2020. That is simply not true.

17.     To the contrary, throughout this litigation, Plaintiffs have repeatedly asserted that their state law claims for fraud, fiduciary duty and misappropriation through breach of confidence were a cause of Plaintiffs' damages, including Plaintiffs' loss of any patent rights related to its logistics technology.[36] From day one, Plaintiffs have made clear they are not asserting any claims under federal law, nor could they given that Plaintiffs sold the

---

[35] Appx at 39-43

[36] Appx at 5-7 (The table shows just some of the "other papers" in this case where Plaintiffs have made clear their claims are based on conduct actionable under state-law that caused Plaintiffs' lost patent rights – not patent infringement.)

patent rights to SandBox.[37] Instead, Plaintiffs assert only state law claims based on wrongful conduct by Defendants actionable under state law (false representations, failures to disclose, breaches of fiduciary duty, participation in another's breach of fiduciary duty, breach of confidence) that caused Plaintiffs to sustain damages, including the loss of patent rights in logistics technology Plaintiffs developed and first disclosed to Defendants.

## ARGUMENTS AND AUTHORITIES

18.     "Because it implicates important federalism concerns, removal jurisdiction is strictly construed." *Amir-Sharif v. Livingston*, No. 3:16-CV-231, 2016 U.S. Dist. LEXIS 160794, *2 (S.D. Tex. 2016), citing *Frank v. Bear Stearns & Co.,* 128 F.3d 919, 921-922 (5th Cir. 1997). "Any doubts concerning removal must be resolved in favor of remand." *Id.*, citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Consequently, "the federal court must presume that a suit lies outside [its] limited jurisdiction." *Id.*, quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "The party seeking removal has the burden of proving that federal subject matter exists." *Id.*, citing *Howery*, 243 F.3d at 916, and *Frank*, 128 F.3d at 921-922.

19.     "Under the well-pleaded complaint rule, 'a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action.'" *Gutierrez v. Flores*, 543 F.3d 248, 251-52 (5th Cir. 2008). The rare exception to this rule is when cases fall within a "special and small category

---

[37] Appx at 12 at ¶3.5; Appx at 328-333

of cases" as determined by a four-part test in which all four parts of the test must be satisfied. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).[38] "Any ambiguities are construed *against* removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (emphasis added).

20.     "A plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 535 (5th Cir. 2017). "Still, 'there is no federal question jurisdiction if the plaintiff properly pleads only a state law cause of action.'" *Id.*; *see Delarosa v. Matthews*, No. 6:16-CV-921-RWS-JDL, 2016 U.S. Dist. LEXIS 190662, at *5 (E.D. Tex. Aug. 18, 2016). The court "limits its inquiry to 'what necessarily appears in the plaintiff's statement of his *own* claim … unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Amir-Sharif* at *3, quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914).

21.     Here, Defendants cannot satisfy their burden to establish federal jurisdiction. Remand is proper for at least three reasons: (1) Plaintiffs do not assert any federal law claims; (2) Plaintiffs' state law claims do not fall within the "special and small category of cases" that otherwise permit this Court to assert jurisdiction; and (3) even if Defendants could make such a showing, Defendants' removal attempt is untimely.

---

[38] The *Gunn* test is discussed in Part B below.

## A.  *Plaintiffs assert no Federal Claims*

22.  Plaintiffs do not assert any federal law claims in this lawsuit. Plaintiff's Third Amended Petition asserts claims against Defendants for breach of confidence; breach of fiduciary duty; common-law fraud; fraud by non-disclosure; and civil conspiracy.[39] All claims are Texas state common-law claims. Plaintiffs do not assert, nor have they ever asserted, any claims arising under Federal law. To the contrary, from day one, Plaintiffs "expressly disavow[ed]" any such claims in their pleadings.[40] *See Ngo v. PM/CTS, LLC*, No. 4:15-CV-1644, 2015 U.S. Dist. LEXIS 122514, at *10 (S.D. Tex. Sept. 15, 2015) (remanding and noting that "Plaintiff has stated unequivocally that he has no intention of bringing any federal-law claims").

23.  Defendants agree in their Notice of Removal that Plaintiffs have not brought a claim for patent infringement (nor any other claim arising under federal law), but they instead read this unalleged claim into Plaintiffs complaint and use that unalleged claim as their basis for removal to this Court.[41] That strawman argument fails. Defendants ignore the well-pleaded complaint rule and the fact that Plaintiffs *own no patent* and thus *cannot* assert a patent infringement claim.

24.  Defendants' Notice of Removal relies solely on the report of Plaintiffs' liability expert (the "Denman Report") to support removal.[42] However, in "cases where the pleadings assert solely state-law claims and leave no ambiguity as to a possible federal

---

[39] Appx at 43-46

[40] Compare Appx at 12 at ¶3.5 (Original Petition) with Appx at 30 at ¶3.5 (Third Amended)

[41] See Notice of Removal (Document 1) at ¶6.

[42] See Notice of Removal (Document 1) at ¶¶4-6.

claim, district courts have consistently rejected a defendant's attempt to use 'other paper' to establish federal question jurisdiction." *Delarosa*, 2016 U.S. Dist. LEXIS 190662, at *5. "Generally, when courts look to 'other paper' to ascertain removability, courts are clarifying that *diversity* jurisdiction has been established." *Nieto v. Lantana Cmty. Ass'n*, No. 4:19-CV-00239, 2019 U.S. Dist. LEXIS 128482, at *13 (N.D. Tex. Aug. 1, 2019) (emphasis in original). Defendants offer no support for applying that same analysis to *federal question* jurisdiction.

25.     In fact, "[d]ue to the well-pleaded complaint rule, the § 1446(b)(3) analysis is different when courts look to 'other paper' to clarify whether federal question jurisdiction has been established." *Id.* "[O]ther paper providing new information—not contained in the complaint—cannot enable a defendant to ascertain that the case is one which is or has become removable for the purposes of establishing federal question jurisdiction under § 1331" because the "other paper may only 'clarify the federal nature of an existing claim in the well-pleaded complaint, and not relate to a putative claim that has not yet been pled.'" *Id.* at *14 (collecting cases). "In other words, for removal based on 'other paper' to be proper and consistent with the well-pleaded complaint rule, the 'other paper' cannot be used to interject a new federal claim, but instead must be used to clarify that the plaintiff's existing claims are federal in nature." *Strikes for Kids v. Nat'l Football League*, No. 3:17-CV-0018-B, 2017 U.S. Dist. LEXIS 79246, at *8 (N.D. Tex. May 24, 2017).

26.     Courts will not find federal question jurisdiction based on an expert report "merely because [plaintiff's] expert report alludes to a violation of a federal law," and this is true "even though a federal remedy may be available on the facts." *Gros*, 2019 U.S. Dist.

LEXIS 101252, at *5. Here, Defendants vastly overstate the scope of the Denman Report of his expected testimony.[43]

27.     David Denman is a professional engineer engaged in this case to undertake a comparison of the product Defendants make and sell today, the PropX container, and the original logistics technology that Plaintiffs shared with Defendants ("Harris Container").[44] To do so, Denman conducted a physical examination of the PropX container.[45] Because Hi-Crush claims to have discarded the prototypes that were shipped to its Wisconsin facility in 2013, there is no longer a Harris Container for a physical examination. So, in order to perform his comparison with the PropX container, Denman reviewed the patent application (and resulting patents), including the design drawings and schematics that were used to build the Harris prototypes.[46] Denman then compares the features of the PropX container to the features of the Harris Container, as described by the patents, to offer his professional opinion as to whether the PropX container was derived from the Harris Container.[47] From that comparison, along with his review of the design history of the PropX, Grit, and Harris containers, Denman concludes that the PropX product was derived from the Harris prototype designs Plaintiffs shared pursuant to the joint venture.[48]

---

[43] Appx at 52-75 (Denman Report)

[44] Appx at 54 (Denman Report at ¶1)

[45] Appx at 56 (Denman Report at ¶3-3.1)

[46] Appx at 57-61 (Denman Report at ¶3.2-5.18)

[47] Appx at 57-61 (Denman Report at ¶3.2-5.18)

[48] Appx at 56-69 (Denman Report at ¶3.2-9)

28.     Denman's analysis was not done in order to prove or support any claim for patent infringement. Rather, Denman's analysis is offered to establish that Defendants used the Harris Container in the design of the PropX container:

- in breach of their fiduciary duties owed to Plaintiff as joint venturers (See Appx at 43-45 at ¶¶6.3-6.6);

- contrary to their fraudulent representations that the Harris Container was not "viable" and that Defendants did not wish to go further with development of the container or bringing this container solution to market (See Appx at 45 at ¶6.7);

- contrary to their fraudulent non-disclosures of an intent to proceed with that same concept first learned from Plaintiffs – only with other partners (See Appx at 45-46 at ¶¶6.8-6.10); and

- in breach of their obligations to maintain in confidence what Plaintiffs disclosed as part of being "partners" for bringing Plaintiffs' logistics technology to market (See Appx at 43 at ¶6.2).

That expert analysis is further supported by the statement of Lyle Bolsinger, who was present when the PropX product was designed in the image of Plaintiffs' original design.[49] Denman's analysis is offered to show that the PropX product is a knock-off of the logistics technology that Defendants originally agreed to pursue as "partners" with Plaintiffs, only to defraud Plaintiffs into believing Defendants were no longer interested in pursuing, causing Plaintiffs to assign their patent rights to SandBox. Denman's analysis is offer to support Plaintiffs' state law claims for damages arising from such conduct.

29.     The facts here are similar to other cases in which motions to remand were granted. For example, in *DeLaRosa v. Matthews*, Delarosa sued for breach of fiduciary

---

[49] Appx at 62 (Denman Report at ¶6)

duty, aiding and abetting breach of fiduciary duty, conversion, tortious interference, and trade secret misappropriation arising "out of a Plaintiff DeLaRosa and Defendant Thomas's design for a low-profile vacuum trailer" for which a patent was issued and involving a second patent filed by some of the defendants "for a nearly identical trailer disclosed" in the earlier, '232 Patent. 2016 U.S. Dist. LEXIS 190662, at *2. Defendants removed, but the Court disagreed, noting that the "primary conduct" related to work on the prior patent and misrepresentations to the Plaintiff. *Id.* at *7.

30.     Here, the primary conduct is the fraudulent representations to Plaintiffs that Defendants were "out" when, to the contrary, (acting in breach of fiduciary duties and knowing participation in breaches of fiduciary duties) switching horses and planning to team up with PropX to develop a knockoff of Plaintiffs' logistics technology *to the exclusion of* Plaintiffs. That wrongful conduct (actionable under state law) led Plaintiffs to sell and assign their patent rights to a third party, and Plaintiffs sue in this case for direct and consequential damages resulting from Defendants' tortious conduct. There is no valid basis for federal question jurisdiction based solely on a patent being referenced by an expert to offer testimony in support of those claims.

31.     Lastly, Defendants' strawman argument ignores that only patent owners or exclusive licensees can assert claims for patent infringement. *Keith Mfg. Co. v. Cargo Floor B.V.*, No. 5:15-cv-9-CMC, 2017 U.S. Dist. LEXIS 234794, at *38-39 (E.D. Tex. 2017). There is no dispute Plaintiffs are not patent owners because any such rights were assigned to Sandbox. That is the basis of Plaintiffs' claim – being deceived out of potential patent rights – not any claim for patent infringement. This case should be remanded.

**B.**     ***Plaintiffs' State Law Claims do not necessarily raise disputed and substantial federal issues***

32.     Where claims are brought exclusively under state law, the Supreme Court of the United States has determined that only a "special and small category" of cases will still support federal jurisdiction those over those state law claims. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "The Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy." *Id*. Federal jurisdiction over state law claims is only supportable "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. Importantly, all four factors are required. *Id*. And, a "state-law cause of action does not raise a federal issue simply because the parties may ultimately litigate a federal issue." *Amir-Sharif*, at *3, citing *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 942 (5th Cir. 2013).

33.     In *Gunn*, the Court held that Texas state courts possessed subject matter jurisdiction over claims for legal malpractice even when the legal malpractice claim was based on alleged errors in a patent infringement case. *Gunn*, 568 U.S. at 258-65. This was so even though "resolution of a federal patent question [was] 'necessary' to Minton's case" since Texas state law requires proof of a case within a case to establish legal malpractice. *Id*. at 258 In fact, the Supreme Court found that both the first element ("necessarily raised") and the second element ("actually dsputed") existed in *Gunn*. *Id*. at 259. Nevertheless, because the third element was lacking, remand was required. *Id*. at 260-264. In other words,

*Plaintiffs' Motion for Remand*                                                                                      Page 17

state law claims remained state law claims even where a patent (or patent application) was "necessarily raised," "actually disputed," and relevant evidence for a jury to consider in determining those state law claims.

34.     Discussing the third element, the *Gunn* Court held that while "resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case," missing was anything "demonstrating that the question is significant to the federal system as a whole." *Id*. at 263-64. The Court reasoned that the question of substantiality focuses on whether the issue was of significant importance to the "federal system as a whole" as opposed to just a significant issue between the parties in a particular dispute. *Id*. at 260-264. Because of the backward looking nature of the claims asserted, the Court found that no matter how a state court might resolve the "hypothetical patent questions those cases present," the outcome would have no impact on real world prior federal actions. *Id*. Further, in resolving the "nonhypothetical patent questions those cases present," federal courts in the future would not be bound by state court decisions. *Id*. And addressing the fourth element, the *Gunn* Court held that in the absence of a substantial federal issue, the state's interest in upholding state law tilted the balance in favor of the state retaining subject matter jurisdiction over the case. *Id*.

35.     Here, there is far more reason for jurisdiction to remain with the Texas state courts than existed in *Gunn*. In *Gunn*, the plaintiff would have been required to actually prove patent infringement (i.e. "that he would have prevailed in his federal patent infringement case if only [defendants] had timely made an experimental-use argument on his behalf") as part of his state court claim because of the "case-within-a-case" doctrine for

legal malpractice claims in Texas. *Id.* at 259. Here, none of Plaintiffs' state-law claims require such proof or otherwise "necessarily raise" a patent law issue. A "state law cause of action 'necessarily depends on a substantial question of federal patent law,'" if "the elements of the claims appearing on the face of the complaint'" necessarily raise federal issues. *HF Controls, L.P. v. Forney Corp.*, No. 3:01-CV-0045-G, 2001 U.S. Dist. LEXIS 12778, at *5-6 (N.D. Tex. Aug. 22, 2001) (quoting *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1328-29 (Fed. Cir. 1998). None of Plaintiffs' claims for breach of confidence, breach of fiduciary duty, common-law fraud, fraud by non-disclosure, and civil conspiracy will necessarily raise federal issues. As such, Defendants have not established the first element of the test.

36.     Nor can they establish the second. No issue of federal law is "actually disputed" by the parties here. Plaintiffs sold and assigned their patent rights in 2015 after Defendants deceived them about Defendants' interest in continuing their business relationship. Plaintiffs' damage model is based on Plaintiffs' losses had they not been defrauded into giving away their patent rights (i.e., selling those property rights to a third-party because of Defendants' fraud, breach of fiduciary duty, and other tortious conduct).[50] There is no dispute that Plaintiffs no longer own the patent rights (and thus cannot sue for patent infringement), nor is there any dispute that there was later a patent issued after Plaintiffs sold and assigned their rights.

---

[50] In fact, the evidence shows discussions of royalty payments or other compensation to Plaintiffs (including emails between Defendants and Plaintiffs) as well as prospective royalty payments by PropX to others as compensation – before and regardless of whether any patent ever actually issued. [Appx at 182-185; 290-293; 320-326]

*Plaintiffs' Motion for Remand*                                          Page 19

37.     Even if Defendants could somehow shoehorn this case into passing the first two parts of the test, Defendants (like the defendants in *Gunn*) would "founder" on the third part of the test – substantial importance. *Gunn*, 568 U.S. at 260-264. As in *Gunn*, while any potential patent law issues that might arise in the context of this litigation would certainly be important to the parties, there is no impact on the "federal system as a whole" that would justify federal subject matter jurisdiction. *Id*. The fraud and tortious conduct against Plaintiffs is a backward looking cause of action. Thus, no matter how a state court might resolve any hypothetical patent law questions (if any arise), there would be no impact on real world federal court decisions. *Id*. at 261.

38.     Nor would this case give rise to any issue preclusion in any other matter. This suit neither seeks to question or invalidate, nor will any state court determination in this case question or invalidate any of the patents owned, sold, or prosecuted by any of the parties here, so there is no need to protect uniformity in the law. The Supreme Court of Texas recently decided a case using the *Gunn* analysis and reached the same conclusion. *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 70-73 (Tex. 2021).

39.     Here, instead of relying on fraudulent representations that a patent was valid and enforceable to *purchase* patent rights as was done in *NFTD*, Harris relied on fraudulent representations that his patent application was "not viable" to *give up* those patent rights. There is no meaningful difference between the nature of the fraudulent representations, except that the plaintiff in *NFTD* would be required to prove more (a valid or enforceable patent) than Plaintiffs need prove here (that, contrary to their representations, Defendants thought the logistics technology remained viable as evidenced by their pursuit of that same

concept through PropX). Although none of the claims brought by Plaintiffs "necessarily raise" a patent law issue, to the extent Defendants allege they do, the same analysis from *NFTD* confirms this case belongs in state court. Nothing decided by the state court in this case would affect the real life validity of the patents, and should their validity ever be at issue a "federal court in the context of an actual patent case" would not be bound by any resulting state court decision. *Id*.

40.     Finally, similar to the *Gunn* Court's analysis of the fourth element, with no substantial federal issue here, the state's interest in upholding state law tilts the balance in favor of the state retaining subject matter jurisdiction over the case. *See* 568 U.S. at 264. Plaintiffs assert state law claims, and Plaintiffs' state law claim do not necessarily raise a federal issue that is actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. The Court should remand this case to the State District Court.

**C.     *Defendants' Notice of Removal is Untimely Under 28 U.S.C § 1446(b)***

41.     In addition to being improper, Defendants' removal is untimely. Removal is only timely if "a notice of removal [is] filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C.S. § 1446(b)(3). Here, Defendants waited nearly three years after being made aware of the factual basis of Plaintiffs claims before filing their Notice of Removal. Even assuming Plaintiffs' claims are removable (which, as set forth above, they are not), Defendants' delay in asseting removal requires this case be remanded.

42.     Since at least January 21, 2020 Defendants have been aware that Plaintiffs' claims center on Defendants' conduct in (1) forming a joint venture with Plaintiffs to bring their logistics technology to market; (2) obtaining counsel to continue the patent application that Plaintiffs previously filed; (3) fraudulently representing to Plaintiffs that the patent application was "not viable"; (4) fraudulently representing to Plaintiffs that Defendants did not want to go forward with developing this logistics technology; (5) forming a "container division" in PropX to bring a knockoff of Plaintiffs' technology to market; and (6) instructing their employees to "go around Harris and Cope's patent" in developing the PropX container.[51]

43.     There is more. Reference to the patent that was eventually issued to SandBox (after it acquired the rights) has been repeated and continual throughout this case. It is disingenuous (at best) for Defendants to now claim they first ascertained that this patent relevant to this case only upon receipt of Plaintiffs' expert reports. Plaintiffs' pleadings, both parties' discovery requests and responses and hearing arguments and motion practice, and deposition questions and answers throughout the case have discussed the similarities between Plaintiffs' design, the original patent application for that design, the patent ultimately issued based on that design, Defendants' ability to build around that design, and a comparison of the PropX product to Plaintiffs' design. Some of those references identified in the table at Appendix 5-7 to this Response. In fact, in preparation for at least one deposition of the individual defendants (Jay Alston), counsel for Defendants' reviewed

---

[51] Appx at 13-14

the patent that was ultimately issued based on the patent rights that Plaintiffs assigned in August 2015 as part of preparing Alston for his deposition.[52] Clearly, Defendants knew these patents were going to be an issue in this case related to Plaintiffs' state-law claims.

44.    Plaintiffs' expert reports did not disclose any information new to Defendants. In support of Plaintiffs' state law claims, Denman (Plaintiffs' liability expert) compared the Harris container concept to the current PropX product.[53] Since Hi-Crush claims to have discarded the prototypes built pursuant to the joint venture, Mr. Denman used the patent application and design drawings.[54] These comparison materials are explicitly described as the information disclosed to Defendants in Plaintiffs' Original Petition of January 2020 as "copies of the patent application [and] design drawings."[55] Defendants requested and Plaintiff produced copies of all the materials relied on by Denman through the discovery process.[56] The Harris patent application and design drawings Denman used to conduct his analysis have been discussed in multiple depositions.[57] All of this occurred more than thirty days before Defendants filed their Notice of Removal.

45.    In addition to document production and depositions, Defendants have been well aware through written discovery that Plaintiffs contend the information Plaintiffs were defrauded out of was used to design the PropX container, as evidenced by requests for

---

[52] Appx at 206-208 (Alston Deposition at 28/13-30/2 where Jay Alston testified that counsel reviewed the patent with him as part of preparations for deposition prior to his ***September 29, 2022*** deposition)

[53] Appx at 54-61 (Denman Report at ¶1-5.18)

[54] Appx at 54-61 (Denman Report at ¶1-5.18)

[55] Appx at 18

[56] Appx at 89-97

[57] Appx at 5-7 (summarizing same)

admission served to the individual Hi-Crush Defendants on March 9, 2022.[58] These

requests for admissions include the following:

> **REQUEST FOR ADMISSION NO. 1**: Admit Plaintiffs disclosed a Containerized Sand Product to You prior to 2012 similar to or resembling Provisional Patent Application Number 61/538,616.
>
> **REQUEST FOR ADMISSION NO. 4**: Admit You disclosed the Containerized Sand Product referenced in Request for Admission No. 1 to PropX.
>
> **REQUEST FOR ADMISSION NO. 6**: Admit that the Containerized Sand Product sold by PropX was derived from Provisional Patent Application Number 61/538,616
>
> **RESPONSE:**

A similar request for admission was served on PropX on March 9, 2022:[59]

> **REQUEST FOR ADMISSION NO. 1**: Admit that the Containerized Sand Product identified in response to Interrogatory No. 1 was derived from Provisional Patent Application Number 61/538,616
>
> **RESPONSE:**

Clearly, the patent application that Plaintiffs and Defendants jointly prosecuted prior to

2015, and the patent ultimately issued after Plaintiffs assigned those patent rights in August

2015, have been discussed and an issue throughout this case. For Defendants to now claim

that their ***first notice*** of this came with receipt of the Denman Report in October 2022

ignores all interactions between the parties since litigation began in January 2020.

46.     As they have from day one, Plaintiffs disavow any federal claims and deny

federal jurisdiction. But, even if such jurisdiction existed based on Plaintiffs' pleadings,

Defendants' notice of removal was filed long after the thirty-day deadline and is in all

---

[58] Appx at 115; 124; 133; 142
[59] Appx at 106; 151

things untimely. Because Defendants have failed to file a timely notice of removal this case should be remanded to state court.

## RELIEF REQUESTED

47.    Plaintiffs Robert Harris, Ron Cope, and Bulk Trans-Load Authority, LLC respectfully requests that the Court grant this Motion for Remand and remand this matter to the 334th Judicial District Court of Harris County, Texas.

Dated:  January 20, 2023

Respectfully submitted,

/s/ Derrick S. Boyd

Derrick S. Boyd
State Bar No. 00790350
**BOYD POWERS & WILLIAMSON**
105 North State Street
Decatur, Texas 76234
T: (940) 627-8308
F: (940) 627-8092
Email: dboyd@bpwlaw.com

Gregory F. Cox
State Bar No. 00793561
Amber Anderson Mostyn
State Bar No. 90001704
**MOSTYN LAW**
3810 West Alabama Street
Houston, Texas 77027
T: (713) 714-0000
F: (713) 714-1111
Email: GFCDocketEfile@mostynlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of the foregoing was served on counsel of record via e-service on Friday, January 20, 2023.

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs conferred with Counsel for Defendants concerning the attached motion on December 16, 2022 to confirm that Defendants opposed remand of this case to State Court. Thereafter, counsel for Plaintiff filed a pre-hearing letter dated December 16, 2022 requesting a pre-motion conference with the Court. [See Document 13] Counsel for Defendants responded by filing a letter dated December 21, 2022. [See Document 14] The parties, through counsel, met with the Court on January 6, 2023 for a pre-motion conference. The Court set a briefing schedule at the request of the parties. As such, this matter remains opposed and is therefore presented to the Court for determination.